UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) ) ) ) v. ) ) FRANCIS JIMENEZ MINYETTY, ) ) Defendant. ) ) ) | Case No. 20-cr-10004-DJC-1 |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                                February 14, 2023

**I.      Introduction**

Pending before the Court is Petitioner Francis Jimenez Minyetty's ("Minyetty") motion for *habeas* relief (the "Petition") under 28 U.S.C. § 2255.  D. 191.  For the reasons stated herein, the Court DENIES the Petition.

**II.     Standard of Review**

   **A.      Standard of Review in *Habeas* Cases**

Under § 2255, an incarcerated individual may move to vacate their sentence if it "(1) was imposed in violation of the Constitution, or (2) was imposed by a court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was otherwise subject to collateral attack." David v. United States, 134 F.3d 470, 474 (1st Cir. 1998) (citing Hill v. United States, 368 U.S. 424, 426–27 (1962)).  The petitioner carries the burden to make out a claim for such relief.  Id. (citation omitted).

   **B.      Ineffective Assistance of Counsel on *Habeas* Review**

A petitioner establishes ineffective assistance of counsel if they show (1) "that counsel's

1

performance was deficient;" and (2) "that the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984). Deficient performance constitutes performance that falls "below an objective standard of reasonableness under the circumstances." Yeboah-Sefah v. Ficco, 556 F.3d 53, 70 (1st Cir. 2009) (citation and internal quotation marks omitted). To demonstrate prejudice, a petitioner must show "that, but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different." Id. (citation and internal quotation marks omitted). "Judicial scrutiny of counsel's performance must be highly deferential," and the petitioner must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

### III.   Factual and Procedural Background

#### A.   **Factual Basis for Charges**

Starting in approximately March 2019, Drug Enforcement Administration ("DEA") agents began investigating Minyetty and several coconspirators for the distribution of fentanyl powder and fentanyl pills. Presentence Investigation Report ("PSR") ¶ 8. Using a confidential source ("CS"), these DEA agents conducted approximately seven controlled purchases of fentanyl from Minyetty and his coconspirators between April and September 2019. Id. ¶¶ 8–11. These purchases were arranged by contacting Minyetty. Id. ¶ 8. While he normally dispatched runners to deliver the drugs and collect payment, he occasionally conducted aspects of the purchases himself. Id. Minyetty and a coconspirator were arrested on November 2, 2019 at 249 Jackson Street, Lawrence, Massachusetts ("249 Jackson Street"), where agents had seen him and his coconspirators enter and exit throughout the course of their investigation. Id. ¶¶ 12–13. Agents subsequently executed a search warrant of 249 Jackson Street, which was sparsely furnished and showed no signs of anyone

living there. Id. ¶ 13. Agents seized drug-related materials, including a mixing bowl and blender containing white powder suspected to be fentanyl, from this location. Id. ¶¶ 12–13.

### B.      Rule 11 Plea Hearing

On August 27, 2020, Minyetty was charged in a superseding indictment with conspiracy to distribute and to possess with intent to distribute 400 grams or more of fentanyl, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B)(vi) (Count I); distribution of 40 grams or more of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(vi) (Count III); distribution of fentanyl, in violation of 21 U.S.C. § 841(a)(1) (Count V); and unlawful reentry of a deported noncitizen, in violation of 8 U.S.C. § 1326 (Count VII). D. 93. Eduardo Masferrer ("Masferrer"), an experienced criminal defense attorney, represented Minyetty throughout the proceedings.

On October 19, 2020, Minyetty pled guilty to all of these charges without a plea agreement. D. 109; D. 154 at 11, 28. At that Rule 11 hearing, in response to the Court's queries, Minyetty stated he had received a copy of the superseding indictment, had an opportunity to "go[] over it with [his] lawyer," understood the nature of the charges, and had discussed the charges, underlying facts, and circumstances with Masferrer. Id. at 9–10. He further indicated that he was "fully satisfied with the counsel, representation, and advice given to [him] in this case by [his] counsel" and was pleading guilty without a plea agreement. Id. at 11.

Critically, Minyetty was informed of and acknowledged the sentencing consequences of his guilty plea multiple times during the plea colloquy. The government explained that the minimum mandatory sentence for both Counts I and III was five years. Id. at 12–13. In response to the Court's questions regarding the statutory penalties, Minyetty then acknowledged when the Court inquired that the counts carried a five-year minimum mandatory sentence. Id. at 13–14. The plea colloquy also involved a discussion of the sentencing guidelines and their application to

Minyetty's case. After the Court explained that the sentencing guidelines were no longer mandatory but still must be considered, Minyetty stated that he had discussed with Masferrer "the guidelines and how they might apply in [his] case." Id. at 17. The Court then conducted a colloquy regarding his potential sentence, his inability to withdraw his guilty plea if unpleased with his sentence, and his right to appeal:

> THE COURT: Do you understand, as I indicated before, that although I'm not required to follow the guidelines, I am required to consider them before I decide your sentence?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you understand that under the current guidelines system, I have the authority to depart or vary from the advisory guideline sentencing range and impose a sentence that might be more severe or less severe than what the guidelines otherwise recommend?
>
> THE DEFENDANT: Yes.
> . . .
>
> THE COURT: Okay. So let me just continue. So, Mr. Minyetty, do you understand that because I'm not required to follow the guidelines, I have the legal authority to sentence you anywhere up to the maximum statutory sentence that applies to each case and above any minimum mandatory sentence provided any sentence I impose is reasonable under the facts and circumstances of your case?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you understand you will not be permitted to withdraw your guilty plea because your sentence ends up being longer than what you expected or longer than what might have been predicted for you?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you understand that you and the government and both parties will have the right to appeal any sentence I impose?
>
> THE DEFENDANT: Yes.

Id. at 18–19.

The hearing ended with a summary from the government of the underlying facts and evidence accumulated against Minyetty. Id. at 22–26. He then agreed with the summary and pled guilty to all counts. Id. at 27–28. In accepting Minyetty's plea, the Court found him "fully competent and capable of entering an informed plea" and "aware of the nature of the charges against [him] and the consequences of [his] plea," and that his guilty plea was "knowing and voluntary." Id. at 28.

### C. Prior to Sentencing

After Probation disclosed the final PSR on February 3, 2021, Masferrer raised several objections to the PSR and the guidelines calculation therein, including objections to the drug weight, the "stash house" enhancement, and the "leadership" enhancement. Considering these objections, the government, with the assent of counsel for Minyetty, sought a continuance to determine whether an evidentiary hearing would be necessary. D. 141. The Court rescheduled sentencing to May 12, 2021. D. 143.

On May 5, 2021, Probation updated the PSR to reflect Masferrer's objections. In its final version, the PSR calculated Minyetty's guidelines on the drug charges[1] as follows: a base offense level of 32 because he was responsible for at least 3,000 kilograms, but less than 10,000 kilograms of converted drug weight; a two-level enhancement for maintaining a premises for the purpose of manufacturing and distributing a controlled substance (based on the "stash house" at 249 Jackson Street) pursuant to USSG § 2D1.1(b)(12); a two-level enhancement for his role as an organizer, leader, manager, or supervisor with respect to his coconspirators, pursuant to USSG § 3B1.1(c); and a three-level reduction for his prompt acceptance of responsibility, pursuant to USSG §

---

[1] The separate offense calculation for Count VII, the unlawful reentry conviction, was eight and had no impact on the total offense level. PSR ¶¶ 28-36.

3E1.1(a)–(b). PSR ¶¶ 21–40. This calculus reflected a total offense level of 33, a criminal history category of I, and an advisory guideline sentencing range of 135–168 months. Id. ¶¶ 41, 46, 84.

Before sentencing, Masferrer and the government filed their respective sentencing memoranda. In its memorandum, the government agreed with Probation's guideline calculation and recommended a sentence of 135 months—the low end of the advisory guideline sentencing range. D. 153 at 1, 3. On Minyetty's behalf, Masferrer challenged the "stash house" and "leader" enhancements, on the bases that Minyetty did not rent or own 249 Jackson Street and played no larger role in the conspiracy than his coconspirators and the drug quantity (including a kilogram seized from Nieves Guzman), and advocated for a sentence of 60 months—the statutory minimum sentence. D. 159 at 1, 6–10.

At the May 12, 2021 video conference sentencing, Minyetty requested that his sentencing be held in person, to which the Court obliged and rescheduled a sentencing to be held in person to May 26, 2021. D. 160.

### D. Sentencing

During the May 26th sentencing, the Court heard both parties address the drug quantity and the "stash house" and "leadership" enhancements. After consideration of the issues, the Court adopted the guidelines calculation as set forth in Probation's May 5, 2021 PSR and imposed a sentence of 96 months' incarceration, four years' supervised release, and a $400 special assessment. D. 169 at 2–3, 5; D. 170 at 1. In reaching its decision, the Court considered, among other things, Minyetty's personal history and explained that the offense consisted of "seven controlled buys in a six-month period" and that his leadership role "was not the mastermind role that perhaps [the Court had] seen other defendants play in drug distribution cases," but that the Court had considered his direction of runners in regards to the controlled buys charged against

him.  D. 170-1 at 3–5.  Significantly, the Court clarified the role the sentencing enhancements played in its decision:

> I've given great consideration to the calculation that would flow from the quantity not including the Guzman kilogram with the additional role enhancement and the stash house enhancement.  I would just note for the record for the benefit of both counsel that I would have come to a sentence of 96 months even if I had not imposed the two-level enhancement for the stash house, largely because I think, as I indicated before, I thought that was a close question.

Id. at 5–6.  Minyetty did not appeal his conviction or sentence.

### IV.   Discussion

Minyetty seeks *habeas* relief on the ground that counsel provided ineffective assistance by failing "to adequately consult with him on his appellate rights."[2]  D. 192 at 1.

#### A.   **Minyetty Has Not Established Ineffective Assistance of Counsel**

Claims that counsel was ineffective for failing to file a notice of appeal or for failing to consult with a defendant regarding their appellate rights are subject to the Strickland test.  Roe v. Flores-Ortega, 528 U.S. 470, 477–80 (2000).  The framework for analyzing such claims was articulated in Flores-Ortega.  There, the Supreme Court explained with respect to Strickland's first prong "that a defense attorney's representation is constitutionally deficient if the attorney either 'disregards specific instructions from the defendant to file a notice of appeal' or fails (under certain circumstances) to consult with the defendant about an appeal."  Rojas-Medina v. United States,

---

[2] While Minyetty also included other grounds for relief in the Petition, D. 191 at 4-7, they are notably absent from his memorandum. D. 191; see D. 197 at 10 n.3. He has therefore waived these grounds.  The First Circuit has repeatedly held that "issues adverted to in a perfunctory fashion, unaccompanied by some effort at developed argumentation, are deemed waived." Watson v. Trans Union LLC, 223 F. App'x 5, 6 (1st Cir. 2007) (quoting United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990)) (internal quotation marks omitted).  Even though *pro se* litigants are afforded a wider latitude than counseled litigants, Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997), they are still subject to this requirement, United States v. Nishnianidze, 342 F.3d 6, 18 (1st Cir. 2003).

924 F.3d 9, 15 (1st Cir. 2019) (quoting Flores-Ortega, 528 U.S. at 480). A duty to consult about an appeal only attaches "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Flores-Ortega, 528 U.S. at 480. In this context, "consult" means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." Id. at 478.

As to Strickland's second prong, "a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." Id. at 484. A defendant is under no obligation to prove the likelihood of success on appeal nor to specify his grounds for appeal, but a court can consider the defendant's failure to specify nonfrivolous grounds for appeal or to have promptly expressed a desire to appeal in determining whether the second prong of Strickland. Id. at 485–86. "[A] defendant whose attorney fails to carry out a duty to consult with him about an appeal is entitled to a presumption of prejudice." Rojas-Medina, 924 F.3d at 16 (citing Flores-Ortega, 528 U.S. at 483).

Minyetty claims Masferrer "did not discuss the potential benefits of appealing the sentence or meet with [him] to ascertain [his] wishes concerning an appeal." D. 191-1 ¶ 4. Applying the Flores-Ortega framework, however, it is clear there was no duty to consult and Minyetty suffered no prejudice.

        1.     *There Was No Duty to Consult*

Minyetty concedes that "this case" is not one in which the "movant specifically direct[ed] his attorney to file an appeal." D. 192 at 3. In this scenario, therefore, he can only demonstrate ineffective assistance of counsel through a failure to consult regarding appellate rights when such

a duty attached. The Flores-Ortega Court described two circumstances in which counsel is obligated to consult with a defendant about an appeal—namely, when a rational defendant would want to appeal and when the particular defendant reasonably demonstrates an interest in appealing. Flores-Ortega, 528 U.S. at 480. Even assuming Masferrer did not consult with Minyetty, neither circumstance is applicable here.

          a)        A Rational Defendant Would Not Want to Appeal

In the case at bar, no rational defendant would want to appeal. The Flores-Ortega Court indicates that "there is reason to think . . . that a rational defendant would want to appeal" where "there are nonfrivolous grounds for appeal." Id. Minyetty has offered no viable ground for appeal. See Rivera-Carrero v. United States, No. 17-1228 (ADC), 2020 WL 6589337, at *3 (D.P.R. Mar. 30, 2020) (explaining no rational defendant would want to appeal where, among other things, "[n]o non-frivolous grounds for appeal are evident or have been identified by petitioner"). The main nonfrivolous issue that arose during Minyetty's sentencing was whether 249 Jackson Street qualified as a "stash house" for purposes of the sentencing enhancement. After having heard argument from counsel about this issue, the Court made a determination that, by a preponderance of the evidence, there was a factual basis for this enhancement. Moreover, the Court made clear that it "would have come to a sentence of 96 months even if [it] had not imposed the two-level enhancement for the stash house." D. 170-1 at 5–6. As such, any basis for attacking Minyetty's sentence on this point would have been frivolous, given the Court's statement and the fact that it imposed a sentence significantly below the advisory GSR of 135-168 months. See, e.g., United States v. Carrozza, 4 F.3d 70, 88 (1st Cir. 1993) (expressing that "an error in applying the guidelines may prove to be harmless if the court makes clear that it would have departed to the same sentence regardless of the exact guideline range" (citation omitted)).

The Flores-Ortega also instructed that, in considering whether counsel had a constitutionally imposed duty to consult with the defendant about an appeal, "a highly relevant factor . . . will be whether the conviction follows a . . . guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." Flores-Ortega, 528 U.S. at 480. Here, Minyetty did indeed plead guilty. D. 109; see United States v. Taylor, 339 F.3d 973, 980 (D.C. Cir. 2003) (finding a guilty plea "certainly relevant" to the inquiry of whether a rational defendant would want to appeal).

The Flores-Ortega Court further directed that "[e]ven in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea." Flores-Ortega, 528 U.S. at 480. While there was no specific sentence bargained for here (since there was no plea agreement between the parties), Probation's sentencing calculation (adopted by the Court) reflected a guideline range of 135–68 months and the government recommended a sentence of 135 months. PSR ¶ 84; D. 153 at 1. In imposing a 96-month sentence, Minyetty received a sentence over three years less than that reflected in the advisory GSR or recommended by the government. See United States v. Crowe, No. CR 08-038S, 2012 WL 1486766, at *4 (D.R.I. Feb. 2, 2012) (considering a rational defendant would not have chosen to appeal where defendant could have received a longer sentence in light of the evidence against the defendant and his criminal history).

Minyetty contends "any rational defendant, expecting a sentence of no more of [sic] 5 years imprisonment could be expected to wish to appeal." D. 192 at 6.[3] However, it was not rational

---

[3] On the same page of his memorandum, Minyetty also argues that there is a reasonable probability he would have appealed because "the sentence imposed was 7 years longer than the maximum sentence he expected when he pleaded guilty," D. 192 at 6, which given the 96 months (eight

10

for Minyetty (or any other defendant) to expect a sentence of no more than five years (the sentence that his counsel advocated for on his behalf), where he was advised that this was the minimum mandatory sentence he could receive and that the Court could impose a higher sentence. D. 154 at 12–14, 18–19. See Pedroso-González v. United States, No. 17-1621 (DRD), 2020 WL 3640525, at *5-7 (D.P.R. July 6, 2020) (concluding no rational defendant would seek an appeal where the petitioner willingly entered a plea agreement, thereby "accept[ing] the potential exposure for the charge he plead guilty to," and where the court "validated his willingness" in executing the plea agreement and "alerted him of the potential changes his sentence might ultimately undergo"). Under these circumstances, Minyetty has not demonstrated a rational defendant would have wanted to appeal. See Taylor, 339 F.3d at 978–80 (stating that no rational defendant would want to appeal where, among other things, there were no nonfrivolous grounds for appeal and the defendant pled guilty).

        b)    Minyetty Did Not Reasonably Demonstrate an Interest in Appealing

A duty to consult also attaches where the particular defendant "reasonably demonstrated" an interest in appealing, but Minyetty expressed no such interest. Flores-Ortega, 528 U.S. at 480. In this context, "reasonably demonstrat[ing]" an interest in appealing requires a defendant to "have done more than merely express his displeasure at sentencing." Rojas-Medina, 924 F.3d at 17 (citing cases). Rather, "the defendant must have said something to his counsel indicating that he

---

years) sentence imposed, means that he is suggesting that the maximum sentence he expected was one year's imprisonment. As suggested above, such outcome was a legal impossibility because two counts of conviction carried a five-year minimum mandatory sentence, which the Court had explained to Minyetty at his plea and he indicated that he understood, D. 154 at 12–14, 18–19. The Court also finds it highly unlikely that Masferrer, an experienced criminal defense attorney, would have advised Minyetty that he would receive a sentence of imprisonment below the statutory minimum mandatory, the lowest possible sentence that he could receive (and which Masferrer urged the Court to adopt).

had an interest in appealing." Id. (emphasis in original) (citation and internal quotation marks omitted). Indeed, "[a] duty to consult arises, for example, when . . . a defendant who received consecutive sentences asked 'about having time run together,' . . . or when a defendant asked after sentencing 'what's next? What can we do now?'" Id. (internal citations and quotation marks omitted).

Here, Minyetty claims he "reasonably demonstrated an interest in appealing" but includes no factual allegations to support this claim, D. 192 at 6, and his affidavit is silent on this point. See generally D. 191-1. Instead, his allegations "are generic and totally lack any evidence or detail as to whether" he articulated an interest in pursuing an appeal. Pedroso-González, 2020 WL 3640525, at *4; see Burgos-Martinez v. United States, No. 17-2231 (FAB), 2018 WL 9986738, at *6 (D.P.R. May 8, 2018) (highlighting that "mere unsupported allegations are not equivalent to asking a lawyer to file an appeal"). Minyetty did not even "express his displeasure at sentencing" or "say anything at the sentencing hearing to suggest that he was interested in an appeal." Rojas-Medina, 924 F.3d at 17 (citing cases); Taylor, 339 F.3d at 981. To be sure, "[t]here is nothing in the record, therefore, to suggest that Plaintiff wished to appeal at any time prior to filing the pending habeas petition." Ryan, 97 F. Supp. 2d at 196.

Accordingly, Minyetty did not reasonably demonstrate an interest in appealing and no duty to consult attached under either circumstance described in Flores-Ortega.

2. *Even If a Duty to Consult Attached, Minyetty Suffered No Prejudice*

Assuming *arguendo* Masferrer had a duty to consult, Minyetty has not shouldered his burden in demonstrating prejudice, which requires "a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." Flores-Ortega, 528 U.S. at 484. While not dispositive of the inquiry, the Flores-Ortega Court instructed

12

courts in making this determination to look to many of the same factors used to assess the first prong, including whether there were nonfrivolous grounds for appeal and whether the defendant sufficiently demonstrated to counsel their interest in an appeal. Id. at 485–86. As discussed previously, neither of these factors applies here. See Rojas-Medina, 924 F.3d at 18 (finding prejudice where the defendant "promptly expressed a desire to appeal" and had "at least one nonfrivolous ground for appealing"); Ryan, 97 F. Supp. 2d at 196–97 (concluding petitioner could not show he would have appealed where he did not express a desire to appeal his sentences or that his counsel had a duty to consult him regarding same under these circumstances).

Under these facts, Minyetty has not demonstrated he would have appealed, but for Masferrer's alleged failure to consult. Worrell v. United States, No. 17-cr-00073-JAW-2, 2020 WL 3036004, at *4 (D. Me. June 5, 2020) (citing DeCato v. United States, 51 F. App'x 888, 889 (1st Cir. 2002)) (highlighting guilty plea, sentence below advisory guidelines, and absence of any grounds for appeal as reasons why petitioner has not demonstrated a reasonable probability of appealing but for counsel's failure to consult).

### B.  An Evidentiary Hearing Is Not Required

Finally, the Court turns its attention to whether an evidentiary hearing is required. To determine whether such a hearing is required, the district "court must take many of petitioner's factual averments as true, but the court need not give weight to conclusory allegations, self-interested characterizations, discredited inventions, or opprobrious epithets." United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993) (citing cases). "Evidentiary hearings on § 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted. An evidentiary hearing is not necessary when a [§] 2255 petition (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as

to the alleged facts by the files and records of the case." Moreno-Morales v. United States, 334 F.3d 140, 145 (1st Cir. 2003) (alteration in original) (internal citations and quotation marks omitted). In other words, "[a] § 2255 motion may be denied without a hearing as to those allegations which, if accepted as true, entitle the movant to no relief, or which need not be accepted as true because they state conclusions instead of facts, contradict the record, or are inherently incredible." Shraiar v. United States, 736 F.2d 817, 818 (1st Cir. 1984) (citing cases) (internal quotation marks omitted). Notably, when such a petition is presented to the judge who presided over the petitioner's proceedings, the judge may look beyond the record and "is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." McGill, 11 F.3d at 225 (citation omitted); see United States v. Isom, 85 F.3d 831, 838 (1st Cir. 1996).

Given this legal framework, no evidentiary hearing is warranted here. This case presents a scenario that requires no evidentiary hearing—namely, where "although facially adequate, [the petition] is conclusively refuted as to the alleged facts by the files and records of the case." Moran v. Hogan, 494 F.2d 1220, 1222 (1st Cir. 1974). Indeed, the only evidence Minyetty proffers in support of the Petition is a short declaration that is replete with internal inconsistencies and contradictions with the record. To begin, the declaration itself is entitled "Declaration of Juan Pablo Sanchez Delgado," not that of Francis Jimenez Minyetty. D. 191-1 at 1. Putting that aside (since it appears to be signed by Minyetty), the Court accepts it as Minyetty's affidavit. The more fundamental problem with it is that the affidavit is contradicted by the record. In the affidavit, Minyetty states that "Masferrer made [him] sign a paper saying that [he] would not appeal before [he] appeared in Court. [Minyetty] did not want to sign the agreement." D. 191-1 ¶ 3. Yet, there was no plea agreement in this matter—a fact which Minyetty himself acknowledged, under oath,

14

to the Court during his colloquy at the Rule 11 hearing. D. 154 at 11. The affidavit continues to contradict the record and also to be internally inconsistent regarding the advice he received from Masferrer as to his sentence. He states that Masferrer told him he would receive a sentence of five years, which he acknowledges in the affidavit as the "minimum mandatory" and acknowledged as such during the plea colloquy. D. 191-1 ¶ 3; D. 154 at 13–14. Nevertheless, in the same paragraph, he attests that Masferrer pressured him to sign the aforementioned, nonexistent plea agreement, which would then lead to "a lesser sentence within the 3 – 5 years range." D. 191-1 ¶ 3. As discussed above, such claim was legally impossible as the Court was prohibited from imposing a sentence less than five years which Minyetty acknowledged that he understood during his plea colloquy. D. 154 at 13-14. Moreover, even as he alleges that his counsel "did not discuss the potential benefits of appealing the sentence or meet with me to ascertain my wishes concerns an appeal" and that he "would have instructed him to file an appeal on my behalf," D. 191-1 ¶ 4, the affidavit does not attest that Minyetty expressed any interest in appealing to his counsel, does not suggest any nonfrivolous grounds for appealing and does not reflect that he instructed his counsel to file a notice of appeal (and Minyetty acknowledged in his memorandum that he did not do so, D. 192 at 3). On this record, the Court concludes that no evidentiary hearing is necessary.[4] See, e.g., David, 134 F.3d at 478 (quoting Machibroda v. United States, 368 U.S. 487, 495 (1962)); Soto v. United States, No. 2:17-cr-00157-JAW-1, 2:21-cv-00307-JAW, 2022 WL 2702444, at *4 n.3 (D. Me. July 12, 2022); Pedroso-González, 2020 WL 3640525, at *4.

---

[4] For the same reasons, the Court DENIES Minyetty's motion to expand the record. D. 195.

V.     **Conclusion and Certificate of Appealability**

For the foregoing reasons, the Court DENIES the Petition, D. 191.  Minyetty may receive a certificate of appealability only if he "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A certificate of appealability is appropriate when "reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong."  Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (citation and internal quotation marks omitted).  Based upon the analysis of the record and the applicable law in this Memorandum and Order, the Court does not, at this juncture, conclude that reasonable jurists would debate its conclusions.  The Court, therefore, is not inclined to issue a certificate of appealability, but will give Petitioner until March 14, 2023 to file a memorandum if he seeks to address the issue of whether a certificate of appealability is warranted as to the Petition.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge